IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMILIO ESTRADA, **Plaintiff,** v. DR. PERCY MEYER, TAMMY STEVENS, RACHAEL BAILEY, C/O JOHN DOE, C/O JOHN/JANE DOE ASSIGNMENT OFFICER, JOHN BARWICK, WEXFORD HEALTH SOURCES, INC., and ILLINOIS DEPARTMENT OF CORRECTIONS, **Defendants.** | Case No. 25-cv-212-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Emilio Estrada, an inmate of the Illinois Department of Corrections who is currently incarcerated at Vienna Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Estrada alleges that Defendants were deliberately indifferent to his need for a low bunk, low gallery assignment, as well as his injuries resulting from a fall from the top bunk.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Estrada has both lower bunk and lower gallery permits due to medical issues involving his lower back, right knee, and feet (Doc. 1, p. 3). After his release from segregation on July 27, 2023, he was assigned to housing unit 2D, cell 23. He alleges that the placement office assigned him to the second floor on the top bunk despite his permits (*Id.*). Estrada alleges that unknown John and Jane Doe placement officers were deliberately indifferent in assigning him to a cell. Upon arrival at his cell, Estrada informed John Doe Wing Officer that he should not be assigned to the second floor on a top bunk due to his medical condition and permits, but the officer threatened to write him a disciplinary ticket if he refused his housing assignment (*Id.*).

At some point after his placement, Estrada fell from the top bunk, injuring his right knee and foot (Doc. 1, p. 3). He eventually lost feeling in his foot from the injury (*Id.*). On August 3, 2023, Estrada was sent to an outside hospital for x-rays (*Id.* at p. 3). A physician at the outside hospital recommended that Estrada be placed in a walking boot and receive injections for his pain (*Id.* at p. 4).

Estrada filed a grievance about both his fall and his improper placement in the top bunk (Doc. 1, p. 4). In response to the grievance, Healthcare Unit Administrator Tammy Stevens incorrectly stated that Estrada jumped from the top bunk causing the injury to his knee (*Id.*). Estrada argues that the characterization of the incident was false, and

Stevens was not present at the time of the incident to know the circumstances surrounding his fall (*Id*.).

After the injury, Estrada continued to place sick call request slips to see a doctor or nurse practitioner (Doc. 1, p. 4). He also developed pain in his neck and back. On November 17, 2023, he was scheduled to see a nurse practitioner, but at the last minute he was informed by staff that the nurse practitioner did not need to see him (*Id*.). He saw nursing staff four days later and received Tylenol for his pain, but he never received the recommended walking boot (*Id*.).

Estrada eventually met with Dr. Percy Meyer (he does state the date of the appointment) and asked about the walking boot recommended by the outside doctor (Doc. 1, p. 4). Dr. Meyer indicated that he could not read the doctor's handwriting and denied Estrada's request for a boot (*Id*.). Estrada alleges that Dr. Meyer failed to inquire with the outside physician or determine the physician's orders. Similarly, Dr. Meyer did not inquire about any physical therapy for his injury (*Id*.). Estrada alleges that there is a policy and/or practice of medical staff delaying care and refusing to carry out the recommendations of outside providers (*Id*.). On several occasions, Estrada complained to Dr. Meyer, Nurse Practitioner Bailey, Tammy Stevens, and nursing staff about his continued pain in his neck, back, right knee, and foot (*Id*. at p. 5). He put in requests to see the doctor and nurse practitioners, but still only received Tylenol for his pain (*Id*.).

Several months later, Estrada went to an outside hospital for treatment, and surgery was scheduled for his lower back (Doc. 1, p. 5). Estrada's surgical wound was closed with staples (*Id*.). After his back surgery, Estrada was sent out for a follow-up

appointment, but correctional officers used a transfer van that was not wheelchair accessible (*Id.*). Estrada alleges that officers Rieley and Smith physically lifted him by the arms and elbows into the van, causing pain to his lower back. Although Estrada complained to medical staff and asked that he be placed in a car for his next appointment, his request was ignored. On a subsequent doctor's appointment correctional officer Brown again lifted Estrada into the transfer van, causing injury to Estrada's back (*Id.*).

On June 5, 2024, Estrada had the staples removed from his back and was informed that he could begin physical therapy. Although his first therapy session was scheduled for July 22, 2024, it was canceled. On August 5, 2024, Estrada met with Nurse Practitioner Bailey, and she informed him that he was ready for physical therapy. On August 12, 2024, Estrada again met with NP Bailey and informed her that he had trouble keeping his balance (*Id.*). He asked if his balance could be caused by his neck injury, and Bailey responded that she forgot about his neck injury (*Id.*).

On August 19, 2024, Estrada had his first therapy session, but the therapist told him that he was not ready for therapy due to the severity of his injuries (Doc. 1, p. 6). Estrada alleges that his injuries were severe due to the delays in treatment he experienced at the prison (*Id.*). He believes that Dr. Meyer, NP Bailey, and Stevens failed to follow the recommendations of outside physicians in order to save money, leading to inadequate treatment for his injuries (*Id.*). Estrada also alleges that Stevens failed to appoint a helper to assist him after his surgery (*Id.*).

**Preliminary Dismissals**

Although Estrada identifies the Illinois Department of Corrections as a defendant, the department is not a proper defendant because it is not a "person" amendable to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983"). Thus, the Illinois Department of Corrections is **DISMISSED with prejudice**.

Estrada also fails to state a claim against John Barwick. Estrada notes that Barwick was the warden of the prison and responsible for its daily operations. He also oversaw the medical providers at the prison. But Barwick cannot be liable simply for his role as a supervisor because the doctrine of *respondeat superior* (or supervisory liability) does not apply to Section 1983 claims. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Further, there are no allegations to suggest that Barwick was aware of Estrada's injuries or his need for medical care. *See Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about the plaintiff's condition, not whether a reasonable official should have known").

Estrada also identifies John and Jane Doe placement officers as defendants, noting that they improperly placed him in a top bunk on the second floor despite his medical permits. Estrada may certainly proceed against identified John/Jane Does (*i.e.*, John Doe #1, John Doe #2), but he only refers to John and Jane Doe placement staff and "the placement office" (Doc. 1, p. 3). These claims are too generic to survive threshold review as he does not describe the individuals involved in assigning him to a cell, nor does he

even state the number of them. Thus, any potential claims against John and Jane Doe placement staff are **DISMISSED without prejudice**.

Estrada also refers to several correctional officers whom he alleges improperly transferred him to a transport van and further aggravated his injuries. Although he identifies C/O Rieley, C/O Smith, and C/O Brown as staff members who injured him, he fails to identify the officers as defendants in the case caption. Because Estrada fails to identify these individuals as defendants, any potential claim against them is **DISMISSED without prejudice**. Similarly, Estrada refers to nursing staff and medical providers without identifying the individuals in the case caption. He also has not identified them by John Doe designation or otherwise described them. Thus, any claim against unknown group defendants is **DISMISSED without prejudice**.

Estrada also alleges that Nurse Practitioner Bailey and Tammy Stevens were deliberately indifferent to his injuries. Estrada notes in conclusory fashion that he made requests for medical care to both Bailey and Stevens, but he fails to allege when he requested care, when he saw the defendants, and their response, if any. He notes that he was transferred out of the prison for care on several occasions and received surgery for his lower back. There are no allegations to suggest that Bailey or Stevens delayed his care in any way. Estrada does note that in August 2024, Bailey stated that she forgot about his neck injury when he inquired about balance issues. But there are no allegations suggesting that she acted with deliberate indifference. In fact, Estrada acknowledges that Bailey scheduled him for physical therapy and discussed his concerns with his balance.

6

At most, her failure to recall his neck injury amounts to negligence which does not rise to the level of a constitutional violation.

As to Tammy Stevens, Estrada alleges that she failed to appoint him an ADA helper or worker for his needs. Estrada fails, however, to allege when he spoke to Stevens about his need for an ADA assistant. A successful complaint generally alleges "the who, what, when, where, and how…" *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Here, Estrada fails to allege when he asked Stevens for an assistant or even when Stevens was made aware of his need for assistance. Finally, Estrada alleges that Tammy Stevens improperly responded to his grievance, stating that he jumped from the top bunk when he actually fell. But her simple response to a grievance, even if inaccurate, fails to state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008). Thus, any potential claim against Bailey or Stevens is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment deliberate indifference claim against John Doe Wing Officer for placing Estrada on the second floor, top bunk.**

**Count 2:** **Eighth Amendment deliberate indifference claim against Dr. Percy Meyer for failing to provide Estrada with a walking boot and denying and/or delaying care for his injuries related to the fall.**

**Count 3:** **Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for having a policy and/or**

>>practice of delaying and denying care in order to save money.
>
>**Count 4:**   Illinois state law claim for intentional infliction of emotional distress for delaying and denying care.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Estrada states a viable claim for deliberate indifference against the John Doe wing officer who placed him in the top bunk on the second floor of the gallery. Estrada alleges that he informed the officer of his medical needs and permits, but the officer forced him to go into the cell. Estrada alleges that the officer's deliberate indifference to his condition led to him falling out of the top bunk and injuring himself. Thus, Count 1 shall proceed against the John Doe wing officer. The Court further adds the current warden of Vienna, Darron Hyte, in his official capacity, to respond to discovery aimed at identifying the John Doe wing officer.

Estrada also states a viable claim against Dr. Meyer for failing to prescribe him the treatment recommended by the outside provider and by delaying care for his injuries. Thus, Count 2 shall proceed against Dr. Meyer.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Estrada also alleges that the delay and denial of care was a result of policies and practices of Wexford. Specifically, Estrada alleges that there were delays in his care due to Wexford's cost-saving policy of denying and delaying off-site medical care. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-4 (7th Cir. 2021); *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Thus, Count 3 will proceed against Wexford.

In Count 4, Estrada alleges that the Wexford defendants' actions were an intentional infliction of emotional distress. To proceed with this claim, he must show that the officials acted in an extreme and outrageous way, intended to inflict severe emotional distress or knew of the high probability that it would occur, and caused him to suffer from severe emotional distress. *See Doe v. Calumet City*, 641 N.E.2d 498, 506-07 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). But other than stating each element in conclusory fashion, Estrada fails to include any factual allegations to indicate that the action of any medical official was extreme and outrageous or done with the intention to cause harm. Thus, Estrada fails to state a claim in Count 4.

## Motion for Counsel

In Estrada's motion for counsel (Doc. 2), he notes that he only has a grade school education, and English is not his first language. But given the early stage of the litigation process, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond

to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Further, there is nothing currently pending that would require the assistance of counsel. Once Defendants have been served and file their Answers, the Court will enter a scheduling order setting forth the next steps in the litigation process. If Estrada experiences difficulties in litigating the case at that point, he may submit another request for counsel. At this time, his motion is **DENIED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall proceed against John Doe Wing Officer. Count 2 shall proceed against Dr. Percy Meyer and Count 3 shall proceed against Wexford. Count 4 and all other claims and defendants are **DISMISSED without prejudice**. Warden Darron Hyte is **ADDED**, in his official capacity only, for the sole purpose of responding to discovery aimed at identifying the unknown wing officer.

The Clerk of Court shall prepare for Dr. Percy Meyer, Wexford Health Sources, Inc., and Darron Hyte (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Estrada. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Estrada, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**. Because Darron Hyte is in the case only to help identify the unknown wing officer, he does not need to file an Answer. Once counsel for Hyte has entered his appearance, the Court will enter a scheduling order with further instructions on discovery aimed at identifying the unknown officer.

Because Estrada's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Estrada, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Estrada is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 7, 2025**

*[signature]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**