UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **EMILIO ESTRADA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:25-cv-00212-GCS** |
| | ) | |
| **PERCY MEYER, WEXFORD HEALTH SOURCES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

**INTRODUCTION AND BACKGROUND**

Plaintiff Emilio Estrada, an inmate of the Illinois Department of Corrections ("IDOC") incarcerated at Vienna Correctional Center ("Vienna"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants, Doctor Percy Myers[1] and Wexford Health Sources, Inc. (collectively, "Defendants"), were deliberately indifferent to his serious medical needs (Doc. 10, p. 7-8).

[1] Myers was named as "Doctor Meyer," but his filings indicate that his name is Myers. (Doc. 42, p. 1).The Court will refer to him as Myers or Doctor Myers in this Order. The Clerk is further directed to correct the spelling of his name in the docket.

The following facts are taken from the record and construed in the light most favorable to Estrada. Estrada has medical permits that require him to be assigned to low bunks and low prison galleries due to problems with his lower back, right knee, and feet. (Doc. 1, p. 3). However, Estrada was assigned to a cell on the second floor of a gallery and a high bunk within that cell. *Id.* at p. 2. Estrada later fell from his bunk, injuring his right knee and his foot. *Id*. at p. 3. An outside physician recommended that Estrada be placed in a walking boot and that he receive injections for his pain. *Id*. at p. 4. Estrada eventually met with Myers and the Warden at Vienna about a walking boot and injections. *Id*. at p. 5. Myers told Estrada that he could not read the outside physician's handwriting; he also did not provide Estrada with a walking boot. *Id*. at p. 5. Estrada complained several times to Myers and to other healthcare workers at Vienna. *Id*. The only medication he received was Tylenol. *Id*.

On May 7, 2025, the Court conducted a review of the complaint pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed with two claims against Myers and Wexford:

**Count 2:** **Eighth Amendment deliberate indifference claim against Dr. Percy Myers for failing to provide Estrada with a walking boot and denying and/or delaying care for his injuries related to the fall.**

**Count 3:** **Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for having a policy and/or practice of delaying and denying care in order to save money.**

(Doc. 10, p. 7-9).

Pending before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies and a supporting memorandum filed by Myers and Wexford. (Doc. 42, 43). Defendants argue that Estrada failed to exhaust his administrative remedies because he failed to adequately name or describe them and because he failed to describe their actions. Plaintiff filed a Response and a supplement that includes medical records and grievances.[2] (Doc. 66, 67). The issue is thus ripe for decision.

## FACTUAL BACKGROUND

The parties agree have identified four grievances that are relevant to the claims in this case. (Doc. 43, p. 2-5; Doc. 66, p. 6-10).

**Grievance #31-08-023**

Estrada filed grievance #31-08-023 on August 14, 2023. (Doc. 43-1, p. 48). Estrada complained he had been assigned to a high bunk and a high gallery in violation of his medical permits, which caused him to fall and injure himself. *Id.* at p. 48-49. The Grievance Officer recommended the grievance be affirmed in part and denied in part.[3]

---

[2] The Court grants Estrada's Motion for Leave to File these exhibits.

[3] The Grievance Officer affirmed the grievance in relation to medical treatment but also wrote that Estrada's complaints about medical treatment were being addressed through another grievance (53-11-23, discussed below). (Doc. 43-1, p. 46). It is not clear how the medical treatment was being addressed elsewhere but also affirmed in relation to this grievance, but because Estrada failed to appeal this grievance to the ARB within sixty days, the apparent contradiction does not affect the Court's decision.

*Id*. at p. 46. The Chief Administrative Officer ("CAO") concurred on April 4, 2024. *Id*. Estrada appealed this decision to the Administrative Review Board ("ARB") on July 28, 2024, nearly four months after the CAO's decision. *Id*. The ARB rejected the appeal as untimely on August 15, 2024. *Id.* at p. 45.

**Grievance #53-11-23**

Estrada filed grievance #53-11-23 on November 20, 2023. (Doc. 43-2, p. 7). Estrada complained he was not receiving adequate medical treatment. He wrote that an outside physician had recommended Estrada receive a walking boot, injections, and an MRI to help with pain in his back, neck, and foot, but he had not received any of those things. *Id.* at p. 7-8. When Estrada spoke with Doctor Myers, Myers said he could not read the recommendation. *Id.* at p. 8. Estrada said Myers should have contacted the outside physician to confirm his recommendation. *Id*. Estrada also complained that several of his appointments to see nurses had been cancelled. *Id*. at p. 7. A Grievance Officer recommended the grievance be denied, and the CAO concurred on April 26, 2024. Estrada appealed the denial to the ARB on June 27, 2024, nearly three months after the CAO's decision. (Doc. 43-1, p. 60). The ARB rejected the appeal as untimely on July 23, 2024. *Id*. at p. 59.

**Grievance No. KX-0224-092**

Estrada filed grievance #KX-0224-092 on February 26, 2024. (Doc. 43-1, p. 70). Estrada complained that several of his appointments to see nurses had been cancelled, in some cases after he had left his cell to go to the health care unit. *Id*. at p. 70-71. Estrada

provided dates and times for the cancelled appointments and provided names of the nurses that he was supposed to see. *Id*. He also explained that seven months had passed since he fell from his bunk, but the health care unit had done little to care for him. *Id*. at p. 71. A Grievance Officer recommended the grievance be denied, and the CAO concurred on April 26, 2024. Estrada appealed the denial to the ARB, who denied the grievance on the merits on June 6, 2024. *Id*. at p. 64, 68.

**Grievance No. KX-0724-271**

Estrada filed grievance #KX-0724-271 on August 4, 2024. (Doc. 43-1, p. 43). Estrada again complained about a delay in medical care. He noted it took eleven months for him to undergo surgery on his back, and he had still not received treatment for his neck or his foot. *Id*. at p. 43-44. He also noted his MRI showed damage to vertebrae in his neck, and the surgeon who operated on his back said that a delay in care at Vienna had made Estrada's foot injury worse. *Id*. Finally, Estrada explained the only care he received was pain pills, but he did not want to be dependent on pills. *Id*. at p. 44. A Grievance Officer recommended this grievance be denied, and the CAO concurred on August 29, 2024. *Id*. at p. 41. Estrada appealed the decision to the ARB on September 10, 2024. *Id*. The ARB denied the grievance on the merits on October 3, 2024. *Id*. at p. 40.

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which

would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome of such a motion. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, the Court must determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds the inmate failed to exhaust administrative remedies, then the inmate is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id.* at 742. If the court determines the failure to exhaust was the inmate's fault, then the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before

allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Estrada is an inmate in the IDOC and is required to follow the regulations contained in the IDOC's Grievance Procedures to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Additionally, an inmate must correctly complete all the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all the steps correctly to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438

F.3d at 809.

The IDOC Grievance Procedures require that an inmate first file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id.* at (a)-(b). The grievance officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of the receipt of the grievance, the grievance officer must report their findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id*. The inmate can appeal the CAO's decision to the ARB within 30 days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officer's report and the CAO's decision to his appeal. *Id*. The ARB then submits its findings and recommendations to the Director who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

## DISCUSSION

As an initial matter, Grievances 31-08-023 and 53-11-23 could not exhaust Estrada's administrative remedies. Estrada did not appeal either grievance within the time frame provided for in the IDOC Grievance Procedures. Both grievances were appealed to the ARB well outside the thirty-day time limit and were denied by the ARB on that basis. Accordingly, they cannot serve to exhaust Estrada's administrative remedies. *See Dole*, 438 F.3d at 809.

Grievances KX-0224-092 and KX-0724-271, on the other hand, exhausted Estrada's administrative remedies against Wexford and Doctor Myers. The primary purpose of a grievance is to provide prison officials an opportunity to address inmate complaints internally, and where a grievance provides prison officials with fair notice to address a complaint, it has served that purpose. *See Maddox*, 655 F.3d at 722. Crucially, the grievance process is not meant to serve as a summons, nor is it designed to provide early notice to individuals or entities who might later be sued. *Id*. Estrada's grievances put the prison on notice of a delay in treating his medical needs. That is all that is required.

Estrada exhausted his administrative remedies against Wexford. District courts within the Seventh Circuit have repeatedly concluded that an inmate does not need to specifically name Wexford or identify a specific Wexford policy in a grievance in order to exhaust his administrative remedies against Wexford. *See, e.g.*, *Montano v. Obaisi as Independent Executor of the Estate of Obaisi*, No. 19 CV 2564, 2024 WL 2892861, at *9 (N.D. Ill. June 10, 2024); *Conley v. Birch*, No. 11-cv-0013-MJR-SCW, 2012 WL 4202702, at *4 (S.D.

Ill. Sept. 19, 2012); *Williams v. Carter*, No. 12 C 50140, 2012 WL 4815476, at *2 (N.D. Ill. Oct. 10, 2012); *Harper v. Henton*, No. 11-cv-406-MJR-SCW, 2012 WL 6595159, at *6 (S.D. Ill. Nov. 30, 2012). Vienna knew that Wexford was responsible for the provision of medical and healthcare services. Estrada's complaints about delays in the provision of those services were sufficient to put the prison on notice of the issue. Indeed, it "should have been obvious." *Montano*, 2024 WL 2892861, at *9. Estrada was not required to name Wexford specifically or to expressly allege a practice or policy in his grievances. All he had to do was put Vienna on notice of delays in treatment with enough detail to allow the prison to address his complaint. Estrada did so, and so he exhausted his administrative remedies against Wexford. Even if a specific practice or policy had to be alleged, one can easily be inferred from the nature of Estrada's complaints. Estrada complained about several cancelled appointments to see a doctor and nurse practitioners, on different dates, authorized by different people. (Doc. 43-1, p. 70-71). The recurrence of the problem and the involvement of several employees permit the inference that Estrada was complaining about a practice or policy rather than an isolated incident.

The same reasoning applies to Doctor Myers. Estrada's grievances alleged problems with outside referrals and with scheduling (or approving) surgeries. These are the types of decisions in which a doctor would be involved. Estrada's medical records also show that Doctor Myers signed off on a number of referrals for Estrada, which shows that he was involved in treating Estrada for the medical conditions at issue here. (Doc. 67, p. 69, 71, 90). This involvement permits the inference that the prison was on notice

that Estrada's grievances put it on notice of an issue with Doctor Myers's conduct. Thus, the grievances were sufficient to exhaust Estrada's remedies against Doctor Myers as well.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 42). The Court will enter a merits scheduling order in due course.

**IT IS SO ORDERED.**

**DATED: September 30, 2026.**

Digitally signed by Judge Sison
Date: 2026.09.30 16:29:16 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**